IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD A. JOHNSON, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| LABOR FORCE, INC., *et al.*, | : | |
| Defendants | : | NO. 10-199 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS                                        December 15, 2011
CHIEF UNITED STATES MAGISTRATE JUDGE

       Ronald A. Johnson ("Plaintiff") has sued Defendants Labor Force, Inc. ("Labor Force"), Bilt-Rite Orthopedics & Safety, Inc. ("Bilt-Rite"), and Mutual Industries North, Inc. ("Mutual"), accusing them of violating his rights under 42 U.S.C. § 1981. Specifically, in his second amended complaint, Plaintiff alleges that, in violation of § 1981: (1) Defendants terminated his employment at Bilt-Rite, because he complained about racial discrimination and informed his managers that he was filing a racial discrimination complaint with the federal Equal Employment Opportunity Commission ("EEOC") (Count One); and (2) Defendants failed to hire him for a permanent position at Bilt-Rite, because he complained about racial discrimination and had informed his managers that he was filing a racial discrimination complaint with the EEOC (Count Two). Second Amended Complaint ("Second Compl.") at 5-6. Defendants Bilt-Rite and Mutual have moved for summary judgment with respect to both counts of the second amended complaint; Plaintiff has responded thereto. For the reasons explained below, Defendants' joint motion is denied.

**I. BACKGROUND**

       Plaintiff alleges that Mutual owns and operates a facility in Philadelphia which manufactures beauty products, construction products, adhesive tapes, fabrics and clothing. Second Compl. at 2.

Bilt-Rite is alleged to own and operate a facility in Bucks County which manufactures orthopedic equipment, such as pillows, braces, collars and bed equipment. *Id.* Labor Force is an employment agency which placed Plaintiff with Mutual and Bilt-Rite and supervised him while he worked for them. *Id.* at 2-3. Plaintiff further alleges that Mutual and Bilt-Rite are "sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of the instant action."[1] *Id.* at 3. This assertion is borne out by the record. Edmund Dunn, the sole owner of Mutual, testified that Bilt-Rite is a registered fictitious name of Mutual, Deposition of Edmund Dunn ("Dunn Dep.") at 7; in addition, William Palmer, formerly the sole owner of Bilt-Rite, testified that, in 2006, he closed his corporation and sold Bilt-Rite's assets to Mutual. Deposition of William Palmer at 8-12.

Plaintiff, an African-American male, alleges that he was hired for a supervisory job with Mutual and Bilt-Rite through Labor Force. Second Compl. at 3. Plaintiff worked from May 2009 to December 8, 2009 at Bilt-Rite's Bucks County facility; he believed he was an employee of both Bilt-Rite and Mutual. *Id.* at 4. He alleges that his salary was paid by Mutual through Labor Force. *Id.* Plaintiff received no written reprimands during his tenure at Bilt-Rite's facility; however, he complained "about racial discrimination, particularly concerning his compensation." *Id.* He also requested and was denied "a permanent management position with Defendants."[2] *Id.* at 4-5. On December 8, 2009, right after Plaintiff informed Labor Force that he had scheduled a meeting with the EEOC to file a charge of discrimination, he was told not to return to work. *Id.*

---

[1] Defendants have not answered the second amended complaint. Nonetheless, because Mutual and Bilt-Rite filed this motion for summary judgment jointly, this court will deem them one entity for purposes of deciding their motion.

[2] It is unclear whether Plaintiff means all Defendants or only Mutual and Bilt-Rite, where he labored.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence that would permit a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). An issue of fact is material only if it might affect the outcome of the suit under the governing law. *Id.* at 248. Credibility determinations are not appropriately made by the judge in summary judgment but must be left for the jury. *Id.* at 255. Further, the record evidence must be viewed in the light most favorable to the nonmovant. *See e.g., Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179 (3d Cir. 2009).

The burden to demonstrate the absence of a genuine issue of material fact rests with the movant, regardless of which party has the burden of persuasion at trial. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (*en banc*), *cert. denied*, 483 U.S. 1052 (1987). If, however, the nonmovant has the burden of proof on an element essential to its case at trial, and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment is mandated. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, because a complete failure of proof regarding an essential element of the nonmovant's case necessarily renders all other facts immaterial. *See id.* at 322-23. Hence, the party moving for summary judgment is entitled to judgment as a matter of law. *Id.* at 323.

### III.  DISCUSSION

A.  **Section 1981 Principles**

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute defines "make and enforce contracts" to "includ[e] the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms and conditions of the contractual relationship." § 1981(b).  To establish a basis for relief under § 1981, a plaintiff must show: (1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981.  *See e.g., Estate of Oliva v. State of New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010).  To establish a *prima facie* retaliation claim under § 1981, a plaintiff must show that:  (1) he engaged in protected activity; (2) his employer took an adverse employment action; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  *Id.* at 798.  Further, in a retaliation case, the plaintiff must demonstrate that there has been an underlying § 1981 violation.  *Id.*

B.  **Defendants' Arguments**

Defendants allege that: (1) Count Two of the second amended complaint should be dismissed, because no open or advertised permanent warehouse manager position existed at Bilt-Rite; (2) both counts should be dismissed, because Plaintiff cannot demonstrate an underlying § 1981

violation; (3) both counts should be dismissed, because no one at Bilt-Rite or Mutual was aware of Plaintiff's alleged protected activity and Labor Force, not Bilt-Rite or Mutual, terminated Plaintiff's employment; (4) Count Two should be dismissed in that Mutual made the business decision not to create a permanent position to offer Plaintiff; and (5) both counts should be dismissed since an EEOC complaint is not a protected activity for purposes of a § 1981 retaliation claim. *See* Memorandum of Law in Support of Defendants Mutual Industries' and Bilt-Rite's Motion for Summary Judgment ("Def. Mem.") at 4-11. The court will address arguments that encompass both counts first, then all other arguments.

### 1. Underlying § 1981 Violation

Defendants assert that Plaintiff has failed to present any evidence that he suffered racial discrimination. Def. Mem. at 5-7. Consequently, he can demonstrate neither a § 1981 violation nor retaliation. *Id.*

Plaintiff claims, in Count One, that he was fired for complaining about racial discrimination and for informing management that he was filing an EEOC discrimination complaint. Second Compl. at 5. He further asserts, in Count Two, that he was refused a permanent position for the same two reasons. *Id.* The only possible underlying § 1981 violation to support Counts One and Two is racial discrimination. To support such a claim, Plaintiff must adduce evidence that Bilt-Rite and Mutual impaired his contract rights in some fashion, *i.e.*, his position was terminated or he was not hired for a permanent position, based upon his race. Neither the owner of Mutual, Mr. Dunn, nor two employees of Bilt-Rite, William and Alec Palmer, admitted that either Defendant took any employment action against Plaintiff because he was black. However, Plaintiff testified that, in his opinion, he was underpaid for the work he was performing at Bilt-Rite, *see* Deposition of Ronald

A. Johnson ("Pl. Dep.") at 55, 65, 70, 81, 86, 107, 109-10, 114, 127-28, and he attributed his underpayment to racial discrimination. *See id.* at 81, 89, 107-08, 109-10, 114, 125-28, 147. More importantly, Plaintiff testified that he told Mr. Dunn, the owner of Mutual and Bilt-Rite, that he believed he was being underpaid as a result of racial discrimination.[3] *See id.* at 81, 114, 125-27, 147. Although Mr. Dunn acknowledged meeting with Plaintiff once and being shown a proposed employment contract, reflecting Plaintiff's desire to be hired permanently by Bilt-Rite, *see* Dunn Dep. at 13-15, he denied that Plaintiff ever complained to him that his low pay was based upon his race or that he was suffering discrimination at Bilt-Rite. *Id.* at 19. This disputed evidence conceivably could convince a jury that Plaintiff suffered or complained about racial discrimination while at Bilt-Rite. The credibility determination of whether Plaintiff or Mr. Dunn is truthful precludes summary judgment on the basis that Plaintiff has not demonstrated an underlying § 1981 violation.

 **2.   Protected Activity**

Defendants assert that filing an EEOC complaint is not protected activity under § 1981. Def. Mem. at 10-11. Plaintiff asserts to the contrary. Plaintiff's Memorandum of Law in Opposition to Defendant Bilt-Rite's Motion for Summary Judgment ("Pl. Mem.") at 17-18.

Defendant cites no binding authority for its assertion that filing an EEOC complaint does not qualify as protected activity under § 1981. Plaintiff has cited authority for his contrary position, *see* Pl. Mem. at 18, however, none of the Third Circuit cases he relies upon nor the non-binding district court opinion he cites expressly so hold. Both parties will have an opportunity to present binding authority to support their respective positions at the time of trial. For now, summary judgment is

---

[3] Plaintiff also testified that Spanish-speaking workers at Bilt-Rite made him feel unwelcome and that one of them directed a racial slur at him. *See id.* at 111-12, 131-32.

inappropriate.

### 3. Defendants Lacked Knowledge of Plaintiff's Protected Activity and Labor Force Unilaterally Terminated Plaintiff's Employment

Defendants maintain that no one from Mutual or Bilt-Rite knew about Plaintiff's alleged protected activity prior to denying him a permanent position. Def. Mem. at 7-8. Furthermore, Labor Force, not Mutual or Bilt-Rite, unilaterally terminated Plaintiff. *Id.* at 8-9.

Defendants' first argument fails because, as explained *supra* Section III(B)(1), there is a genuine issue of material fact concerning whether Mr. Dunn, the sole owner of Mutual and Bilt-Rite, was aware that Plaintiff was complaining about being underpaid based on his race. If the jury believes Plaintiff's version of the events and concludes that Mr. Dunn learned of Plaintiff's complaints before deciding not to hire him as a permanent employee, the jury could find that Mr. Dunn's decision violated § 1981.[4]

Mutual and Bilt-Rite also contend that solely Labor Force terminated Plaintiff without their input. Def. Mem. at 8-9. Plaintiff responds that Mutual and Bilt-Rite were joint employers with Labor Force, hence, Mutual and Bilt-Rite are liable for it's decision to terminate his employment at the Bilt-Rite facility. Pl. Mem. at 19–20.

The following factors are relevant in determining whether two independent entities should, nonetheless, be deemed joint-employers of an employee:

> (1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes and the like.

---

[4]Defendants devote their argument to whether Plaintiff's EEOC complaint, an event which occurred after Plaintiff met with Mr. Dunn, was the reason Mr. Dunn decided not to hire Plaintiff for a permanent position. Def. Mem. at 7-8. However, they ignore Plaintiff's testimony that he told Mr. Dunn that he believed his low pay was racially motivated. *See* Pl. Dep. at 81, 89, 114, 125-27, 147.

*Zarnoski v. Hearst Business Communications, Inc.*, Civ. A. No. 95-3854, 1996 WL 11301, *8 (E.D. Pa. Jan. 11, 1996). Defendants have not disputed the appropriateness of this test, so this court shall apply it to determine if Defendants and Labor Force "'share or determine those matters governing essential terms and conditions of employment.'" *Id.* at *7 (quoting *Nat'l Labor Relations Bd. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1124 (3d Cir. 1982)).

As regards Bilt-Rite's work rules and the hours Plaintiff worked there, the record is clear, and Plaintiff does not dispute, that Bilt-Rite was in control. *See* Deposition of David Woodworth ("Woodworth Dep.") at 39-40. Bilt-Rite also provided whatever supplies and tools Plaintiff needed to perform his work. Pl. Dep. at 146. As a temporary employee, Plaintiff received no employment-related benefits from Bilt-Rite or Labor Force. Woodworth Dep. at 47, 52. It is undisputed that Labor Force paid him nine dollars per hour. Woodworth Dep. at 12, 47; Pl. Dep. at 55, 70. However, David Woodworth (the only Labor Force employee who has been deposed) said that Bilt-Rite set Plaintiff's compensation, Woodworth Dep. at 39-40, 46, and, immediately before Plaintiff stopped working at Bilt-Rite, he had called Bilt-Rite and requested a raise for Plaintiff. *Id.* at 74. Bilt-Rite denied the raise and told Mr. Woodworth that it would not offer Plaintiff a permanent position. *Id.* at 55-56, 74. Mr. Woodworth testified that Bilt-Rite was always free to terminate Plaintiff.[5] *Id.* at 42. The testimony of Mr. Dunn confirmed that Will and Alec Palmer, supervisors at Bilt-Rite, could terminate Plaintiff. Dunn Dep. at 24. Yet, Mr. Woodworth testified, and Plaintiff confirmed, that he decided to remove Plaintiff from Bilt-Rite. Woodworth Dep. at 77; Pl. Dep. at 78.

With respect to factor two, Plaintiff testified that Bilt-Rite's personnel managed day-today

---

[5] Mr. Woodworth said that he, Bilt-Rite or Plaintiff could terminate Plaintiff's employment at Bilt-Rite. Woodworth Dep. at 42.

supervision of his work. Pl. Dep. at 129, 145. Contrariwise, Mr. Woodworth testified that he was responsible to supervise each Labor Force person placed at Bilt-Rite. Woodworth Dep. at 11. The record discloses no discipline of Plaintiff at Bilt-Rite, although Mr. Woodworth testified that he was authorized to do so and was unsure whether Bilt-Rite also could. *Id.* at 43. Finally, there is no dispute that solely Labor Force maintained Plaintiff's personnel records, including payroll, unemployment insurance and withholding taxes. Woodworth Dep. at 12, 45.

Based on the totality of the circumstances, a jury could infer that Bilt-Rite, Mutual and Labor Force were joint employers of Plaintiff. Hence, Bilt-Rite and Mutual could be responsible for Labor Force's adverse action. Therefore, summary judgment based upon Labor Force's decision to remove Plaintiff from his Bilt-Rite assignment is denied.

### 4. No Advertised Position and Business Decision

Defendants argue that Count Two should be dismissed against them because there was no existing advertised permanent warehouse manager position which Plaintiff was denied. Def. Mem. at 4-5. They further contend that the decision not to create a position for Plaintiff was purely a business decision. *Id.* at 9-10.

Defendants rely upon *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994), for their first argument. However, *Fuentes* is a mixed-motive case and the lack of an advertised position concerns an element of a *prima facie* mixed-motive case. *See id.* at 763. Here, Plaintiff is relying upon direct evidence of discrimination, hence, the mixed-motive *prima facie* rationale is inapposite and summary judgment on this basis is denied.[6]

---

[6] The result would be different if Count Two were based on mixed-motive, because Plaintiff neither asserts nor presents evidence that Defendants advertised a permanent warehouse manager position for the Bilt-Rite facility during the time he worked there or thereafter. Hence, Plaintiff could not present a *prima facie* mixed-motive case and Defendants would be entitled to judgment as a matter of law concerning Count Two.

Likewise, Defendants' second argument is based on a mixed motive framework. *See* Def. Mem. at 9 (citing *Fuentes*). Since Plaintiff's claim is based upon direct evidence of discrimination, Defendants cannot properly rely upon the mixed-motive analysis to prevail.

### IV. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is denied. An implementing order follows.